No. 25-10382

———————————

## In the United States Court of Appeals for the Fifth Circuit

———————————

**United States of America**,
*Plaintiff-Appellee,*

v.

**Patrick Dejon Fleeks**,
*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Northern District of Texas
Lubbock Division
5:24-cr-00104-H-BV

———————————

## Initial Brief of Appellant

———————————

<table>
<tr>
<td valign="top">

Jason D. Hawkins
Federal Public Defender

</td>
<td valign="top">

Loui Itoh
Assistant Federal Public
Defender
PO Box 17743
819 Taylor Street Room
9A10
Fort Worth, Texas 76102
(817)-978-2753
Loui_Itoh@fd.org

*Counsel for Mr. Fleeks*

</td>
</tr>
</table>

## Certificate of Interested Persons

The undersigned certifies that the following persons have an interest in the outcome of this case, docketed in the district court at 5:24-cr-00104-H-BV. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

**Federal District Judge:**              Hon. James Wesley Hendrix

**Federal Magistrate Judge:**           Hon. Amanda R. Burch

**Defendant:**                          Patrick Dejon Fleeks

**Federal Public Defender:**            Jason D. Hawkins

**Defense Counsel:**                     Jeffrey A. Sheets
                                        Sarah Gunter
                                        Loui Itoh

**United States Attorney:**             Leigha Simonton (former)
                                        Chad Meacham (acting)

**Assistant U.S. Attorneys:**            Jeffrey R. Haag
                                        Stephen Rancourt
                                        Matthew McLeod
                                        Stephen S. Gilstrap

                                        /s/ Loui Itoh
                                        Loui Itoh
                                        *Counsel for Mr. Fleeks*

## Statement Regarding Oral Argument

Mr. Fleeks requests oral argument. He argues, *inter alia*, that the district court procedurally erred by sentencing him based on accusations that he had assaulted his girlfriend, which she later told the prosecutor that she had fabricated. Oral argument may be helpful to the Court given the complexity of the record and the fact-intensive nature of the claims.

# Table of Contents

Certificate of Interested Persons ............................................................ii

Statement Regarding Oral Argument ...................................................iii

Table of Contents ...................................................................................iv

Statement of Jurisdiction.........................................................................1

Issues Presented For Review ...................................................................2

Statement of the Case..............................................................................3

   I.   Andrea Steptoe falsely accused Mr. Fleeks of assaulting her. She later confessed that she made up the allegations. ...........................4

   II.  Mr. Fleeks pleaded true to disobeying his probation officer's orders to stay away from Steptoe.................................................................7

   III. The court upwardly varied based on its frustration with Mr. Fleeks's "repeat interactions" with Steptoe...................................................9

Summary of the Argument ....................................................................14

Argument..............................................................................................18

   I.   The court procedurally erred by relying on clearly erroneous factual findings. Those findings were based on a withdrawn petition that lacked sufficient indicia of reliability. ...........................................18

      A.  Mr. Fleeks preserved his objection to an upward variance based on his interactions with Steptoe. .......................................18

      B.  The court erred by imposing an upward variance based on factual findings that were clearly erroneous and based on a withdrawn petition with allegations that lacked sufficient indicia of reliability. .....................................................21

      C.  Mr. Fleeks prevails even under plain error review because this Court's precedent clearly bars a district court from

sentencing a defendant based on unreliable and
unsupported allegations. ............................................................ 29

II. The court procedurally erred by considering impermissible factors—
including the seriousness of the conduct involved in the supervised
release violation and the need to punish Mr. Fleeks for that
conduct—as dominant factors in the revocation sentencing .......... 33

A. Plain error review applies. ........................................................... 33

B. The court plainly erred by considering as dominant
factors the seriousness of the conduct and the need to
provide punishment for that conduct ........................................... 34

C. The error affected substantial rights and warrants this
Court's correction. ........................................................................ 39

III. The sentence is substantively unreasonable because the upward
variance cannot be justified without significant reliance on the
clearly erroneous factual findings, the seriousness of the violation
conduct, and the need to punish that conduct ................................ 40

A. This Court reviews this claim under an abuse of discretion
standard. ...................................................................................... 40

B. The court gave significant weight to improper and
irrelevant factors. ....................................................................... 41

Conclusion ........................................................................................... 44

Certificate of Service ......................................................................... 45

Certificate of Compliance ................................................................. 46

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Holguin-Hernandez v. United States,*
    140 S. Ct. 762 (2020) .......................................................................... 41

*Johnson v. United States,*
    529 U.S. 694 (2000) ........................................................................... 35

*Rosales-Mireles v. United States,*
    585 U.S. 129 (2018) ........................................................ 29, 31, 32, 33

*Townsend v. Burke,*
    334 U.S. 736 (1948) ........................................................................... 27

*United States v. Blanco,*
    27 F.4th 375 (5th Cir. 2022) ....................................................... 30, 39

*United States v. Chandler,*
    732 F.3d 434 (5th Cir. 2013) .............................................................. 39

*United States v. Cortes-Zuniga,*
    No. 97-40697, 1998 WL 244744 (5th Cir. 1998) ........................... 26, 30

*United States v. Culbertson,*
    712 F.3d 235 (5th Cir. 2013) ........................................................ 38, 39

*United States v. Dominguez Benitez,*
    542 U.S. 74 (2004) .............................................................................. 30

*United States v. Foley,*
    946 F.3d 681 (5th Cir. 2020) ...................................................... *passim*

*United States v. Gall,*
    552 U.S. 38 (2007) ...................................................................... *passim*

*United States v. Garcia-Perez,*
    779 F.3d 278 (5th Cir. 2015) ....................................................... 19, 21

*United States v. Guillen–Cruz,*
   853 F.3d 768 (5th Cir. 2017) ................................................................ 31

*United States v. Harris,*
   702 F.3d 226 (5th Cir. 2012) ................................................................ 27

*United States v. Herndon,*
   807 F. App'x 286 (5th Cir. 2020) ........................................... 31, 32, 40

*United States v. Jimenez-Espinoza,*
   408 F. App'x 823 (5th Cir. 2011) ........................................................ 24

*United States v. Martinez–Rodriguez,*
   821 F.3d 659 (5th Cir. 2016) ................................................................ 31

*United States v. Miller,*
   634 F.3d 841 (5th Cir. 2011) ................................................... *passim*

*United States v. Neal,*
   578 F.3d 270 (5th Cir. 2009) ....................................................... 19, 21

*United States v. Perez,*
   460 F. App'x 294 (5th Cir. 2012) ........................................... 25, 26, 30

*United States v. Perez-Mateo,*
   926 F.3d 216 (5th Cir. 2019) ..................................................... 32, 40

*United States v. Price,*
   516 F.3d 285 (5th Cir. 2008) ................................................................ 32

*United States v. Redmond,*
   965 F.3d 416 (5th Cir. 2020) ................................................................ 41

*United States v. Rivera,*
   784 F.3d 1012 (5th Cir. 2015), *reh'g denied*, 797 F.3d 307
   (5th Cir. 2015) ........................................................................ *passim*

*United States v. Sanchez,*
   277 F. App'x 494 (5th Cir. 2008) ........................................................ 24

*United States v. Sanchez,*
   900 F.3d 678 (5th Cir. 2018) ................................................... *passim*

*United States v. Sanchez-Arvizu,*
   893 F.3d 312 (5th Cir. 2018).................................................. 31, 32, 40

*United States v. Santacruz–Hernandez,*
   648 F. App'x 456 (5th Cir. 2016)........................................................ 31

*United States v. Smith,*
   440 F.3d 704 (5th Cir. 2006)...................................................... 41, 43

*United States v. Standefer,*
   No. 95-50043, 1996 WL 46805 (5th Cir. 1996) ........................... 25, 30

*United States v. Tobias,*
   662 F.2d 381 (5th Cir. Unit B Nov. 1981) .................................. *passim*

*United States v. Walker,*
   742 F.3d 614 (5th Cir. 2014)................................................................ 35

*United States v. Warren,*
   720 F.3d 321 (5th Cir. 2013)...................................................... *passim*

*United States v. Winding,*
   817 F.3d 910 (5th Cir. 2016)...................................................... 18, 28

*United States v. Windless,*
   719 F.3d 415 (5th Cir. 2013)............................................................. 27

*United States v. Wooley,*
   740 F.3d 359 (5th Cir. 2014)............................................................. 31

**Federal Statutes**

18 U.S.C. § 922(g)(1)........................................................................... 3

18 U.S.C. § 3231 .................................................................................. 1

18 U.S.C. § 3553(a) .............................................................. 17, 41, 43

18 U.S.C. § 3553(a)(2)(A)..................................................... 16, 34, 37

18 U.S.C. § 3583(e) ...................................................................... 16, 34

18 U.S.C. § 3742 .................................................................................. 1

28 U.S.C. § 1291 ............................................................................... 1

**State Statutes**

Texas Penal Code 22.01(a)(1) ........................................................... 4

Texas Penal Code 42.062 .................................................................. 4

**Rules**

FED. R. APP. P. 4(b)(1)(A)(i) .............................................................. 1

Fed. R. Crim. P. 52(b) ................................................................. 29, 33

## Statement of Jurisdiction

This is a direct appeal from a sentence imposed in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The district court entered its final judgment on March 6, 2025. ROA.170-74. Mr. Fleeks filed a notice of appeal on March 10, 2025. ROA.175-76. The notice of appeal was timely. FED. R. APP. P. 4(b)(1)(A)(i).

## Issues Presented For Review

Mr. Fleeks presents three issues for the Court's review.

***First***, whether the district court procedurally erred by imposing an upward variance based on factual findings that were clearly erroneous and based on a withdrawn petition with allegations that lacked sufficient indicia of reliability?

***Second***, whether the district court plainly erred by considering impermissible factors—including the seriousness of the conduct involved in his supervised release violation, and the need to punish Mr. Fleeks for that conduct—as dominant factors in the revocation sentencing?

***Third***, whether the district court imposed a substantively unreasonable revocation sentence because the upward variance from the 5 to 11 month policy statement range to the 18-month sentence cannot be justified without significant reliance on the (1) clearly erroneous factual findings that lacked sufficient indicia of reliability; and (2) the seriousness of the violation conduct and the need to punish that conduct?

## Statement of the Case

On February 23, 2021, Appellant Patrick Dejon Fleeks was sentenced by the district court to 55 months imprisonment and three years supervised release for unlawfully possessing a firearm following a felony conviction, in violation of 18 U.S.C. § 922(g)(1). ROA.99-103. He began his term of supervised release on July 15, 2024. ROA.157.

On August 7, 2024, Mr. Fleeks's wife, Tara Fleeks contacted Mr. Fleeks's probation officer regarding a video recording from August 6, in which he was on the phone with his brother and made statements threatening to shoot Ms. Fleeks. ROA.136. That same day, Mr. Fleeks met with Probation to discuss the video. ROA.136. Mr. Fleeks acknowledged that "he made those statements out of anger" and "advised the probation officer he should have never made the statements and that he has no intentions on bringing harm to Ms. Fleeks." ROA.136-37. He explained that "he and Ms. Fleeks' issues date back prior to his arrest for the instant offense, and they stem from her children and finances." ROA.136. Mr. Fleeks said that he and Ms. Fleeks "would likely end their relationship following the situation." ROA.137.

On August 25, 2024, Mr. Fleeks told his probation officer that he and Ms. Fleeks ended their relationship and that she had made arrangements to move out of their residence. ROA.137.

On August 29, 2024, Mr. Fleeks told the probation officer that he had moved out of the residence and was living temporarily with Andrea Steptoe, Ms. Fleeks's daughter. ROA.137. He told the officer that he was willing to receive mental health counseling to include anger management. ROA.137.

## I.    Andrea Steptoe falsely accused Mr. Fleeks of assaulting her. She later confessed that she made up the allegations.

On October 2, 2024, Probation filed Petition for Person Under Supervision requesting a violator's warrant and alleging that Mr. Fleeks was arrested on September 30, 2024 for Assault Causes Bodily Injury of a Family Member, in violation of Texas Penal Code 22.01(a)(1) and Interference with Emergency Request for Assistance, in violation of Texas Penal Code 42.062. ROA.116-118. According to the Petition, officers responded to an address in Lubbock, Texas, where:

> [T]he victim, Andrea Steptoe (Steptoe), reported she and her boyfriend, Fleeks, were in Fleeks' vehicle outside the residence, where they both reside together. Steptoe stated a verbal altercation occurred and Fleeks began striking Steptoe in

the head and face with his fists multiple times, while in the vehicle. Steptoe reported her three minor children were also in the vehicle and witnessed the physical altercation. Steptoe advised she exited the vehicle and Fleeks began to strike her again with his fists all over her body and he then drug her inside the residence by her hair to continue to assault her. Steptoe advised she attempted to call 911 from her cell phone and while on the phone with dispatch, Fleeks grabbed her phone and broke it.

ROA.116-117. On October, 4, 2024, the government filed a Motion to Revoke Supervised Release, repeating the same allegations as in the Petition. ROA.119-20.

On October 15, 2024, the government filed a Motion to Withdraw Motion to Revoke Supervised Release. ROA.130-31. It explained that on October 14, 2024, "A.S.," the victim of the state offenses, left a voicemail with the assigned prosecutor "indicating that 'everything was false.'" ROA.130. Then, on "October 15, 2024, Fleeks's attorney, Sarah Gunter, and a private investigator met with A.S." who "confirmed that her statements about Fleeks assaulting her and breaking her phone were false." ROA.130. "A.S. then signed an affidavit of non-prosecution in the state case." ROA.130. It concluded, "[b]ecause the Government can no longer prove Fleeks violated a condition of his supervised release, it asks to withdraw its motion." ROA.130.

On October 16, 2024, the court granted the government's motion, and ordered that the government's motion to revoke supervised release be withdrawn. ROA.132. That same day, Probation petitioned the court, asking that "the supervised release violation warrant issued on October 02, 2024, be rescinded and the petition withdrawn." ROA.133. The court signed the order, noting that it "[a]grees" with Probation's recommendation and that "[t]he Petition for Offender Under Supervision dated October 2, 2024 is dismissed and the supervised release violator's warrant issued on the same date is rescinded." ROA.134. The filing included Steptoe's Affidavit of Non-Prosecution. ROA.135.

On October 30, 2024, Mr. Fleeks was released on a personal recognizance bond in the pending state case. ROA.141. A protective order had issued out of Lubbock County, with Steptoe listed as the protected party. ROA.141. The protective order stated that Mr. Fleeks is not allowed to be within 70 yards of Steptoe. ROA.141.

On October 31, 2024, Mr. Fleeks's probation officer directed him to "discontinue all contact with Ms. Steptoe, and he advised that he understood." ROA.141.

On November 6, 2024, Probation notified the court of the circumstances under which Mr. Fleeks ended his relationship with Tara Fleeks in August, and recommended adding mental health treatment as a condition of Mr. Fleeks's supervision. ROA.136-39. The court agreed. ROA.138.

## II. Mr. Fleeks pleaded true to disobeying his probation officer's orders to stay away from Steptoe.

On November 14, 2024, Probation issued a Petition for Person Under Supervision, alleging that Mr. Fleeks violated the conditions of his supervised release by being found in the same vehicle as Steptoe. ROA.140-43. It alleged that Mr. Fleeks violated the conditions that he not commit another crime,[1] and follow the instructions of his probation officer. ROA.141. According to the Petition:

> PCSO were dispatched to 1405 SW 12th street in Amarillo, Texas, regarding a domestic violence situation where a person was being held hostage. Officers were advised Mr. Fleeks and Ms. Steptoe were the parties involved. Prior to officers responding, they were advised that Mr. Fleeks was the respondent in a protective order with Ms. Steptoe being listed as the protected person. Upon officers arriving on scene, contact was

---

[1]     Mr. Fleeks was charged with misdemeanor violation of a protective order in connection with this incident. ROA.188-89, 249-50.

made with an adult female who advised there was no situation regarding domestic violence, and both Mr. Fleeks and Ms. Steptoe both left to go to the store and should return shortly.

While still on scene, both Mr. Fleeks and Ms. Steptoe arrived back to the residence in the same vehicle. The protective order stated Mr. Fleeks is not allowed to be within 70 yards of Ms. Steptoe. Mr. Fleeks was taken into custody and Ms. Steptoe was taken into custody as she had an active warrant out of Randall County, Texas.

ROA.141. The Petition calculated Mr. Fleeks's policy statement range as 5 to 11 months, based on criminal history category III and a Grade C violation. ROA.142.

On January 22, 2025, Probation filed an Amended Petition for Person Under Supervision, adding the allegation that Mr. Fleeks provided a urine sample on October 31, 2024 that tested positive for alcohol. ROA.157-160.

On January 27, 2025, the government filed a Second Amended Motion to Revoke Supervised Release, alleging that Mr. Fleeks violated his supervised release by failing to follow his probation officer's instruction to "not have any contact with Steptoe[,]" and by testing positive for alcohol. ROA.161-63.

### III. The court upwardly varied based on its frustration with Mr. Fleeks's "repeat interactions" with Steptoe.

At Mr. Fleeks's revocation hearing on March 6, 2025, the court stated that it was considering Probation's petition as well as the government's Second Amended Motion to Revoke. ROA.182. It described the allegations as: "Failing to follow your probation officer's instructions; specifically, to not have any contact with Andrea Steptoe;" and "consuming alcohol while on supervision, in violation of my rules." ROA.183. Mr. Fleeks pled true to the violations. ROA.183-84. The court accepted the pleas of true, and the government declined to present any evidence or argument. ROA.184. Prior to hearing Mr. Fleeks's argument, the court indicated its intent to vary upward from the policy statement range. It explained:

> This is an unusual case. We've had prior notifications. We had a prior petition. It was dismissed. After the first case, the-- Ms. Steptoe came forward with a nonprosecution affidavit, or whatever the right phrase is. He's warned, "Stop it." There's a protective order that issues from a different court; "Stop it." Probation officer, "Stop it." And even though all of those multiple prior encounters almost led to a revocation, didn't; protective order issues; specific instructions; does it again. That is concerning to me as an indicator that there's just no regard for the rules placed on him, either by this Court or any other, and the circumstances related to his history and characteristics. So in light of all of that, I've tentatively concluded that I might need to consider an upward variance from the advisory

9

policy statement range, which I have as—your client is a C-III, which is 5 to 11 months.

ROA.184-85.

Defense counsel provided context leading to the violations. ROA.185-86. He explained that Mr. Fleeks "had a drink" due to the stresses of losing his job, and not having a place to stay due to his September arrest and the protective order. ROA.186. The court responded, "to be clear, I'm much less concerned about him testing positive for alcohol than I am the repeat interactions with Ms. Steptoe." ROA.187.

Counsel then explained that "to avoid any contact with Ms. Steptoe, he leaves Lubbock. He goes to Amarillo to his sister's house. He goes 122 miles away to get away from her." ROA.187. While he is there, the Sheriff's Office received a call that "there's a hostage situation," and the person making the call named Mr. Fleeks and Ms. Steptoe. ROA.187. Then, "she travels from Lubbock to Amarillo to where my client was staying and she knocks on the door. And if we're drawing reasonable inferences here, I believe—I haven't heard the phone call. I believe it's her making this phone call to law enforcement." ROA.187-88. Mr. Fleeks told her, "you need to leave. You have to get out of here." ROA.188 (internal quotation marks omitted). But "[s]he insists that he take her to a relative's

house." ROA.188. "So they go to this house where she says you can take me to. There's nobody there. And when they come back, that's when law enforcement is there." ROA.188. Counsel explained:

> [I]t's telling, Your Honor, the charges that aren't filed. Because if this was a hostage situation, he would have been charged with aggravated kidnapping, or kidnapping, probably aggravated assault with a deadly weapon, or, at a minimum, unlawful restraint. But after law enforcement's investigation, he's charged with a misdemeanor violation of protective order because he's near her. And that's it.

ROA.188-89. He asked the court to impose a sentence within the policy statement range "given the nature of how law enforcement got involved in this case and actually what did happen." ROA.189. In response, the judge said, "I understand your argument inferences." ROA.189.

Ultimately, the court imposed a sentence of 18 months, which it recognized as an upward variance from the policy statement range of 5 to 11 months. ROA.192. It explained, "[t]his case is particularly frustrating to me because of the many prior opportunities that you had to correct your behavior." ROA.191. It acknowledged counsel's argument that Mr. Fleeks had moved to a different city to avoid Steptoe, and that she is not "blameless." ROA.191. "[N]evertheless," it said, "you almost get re-

voked once. You don't. You get arrested once. That case goes away. Pro-

tective order issues, and the fact is, you did—you were with her that day.

You were driving with her that day." ROA.191. It continued:

> I understand your argument, Mr. Sheets, but nevertheless,
> when they show up, they're not there, but they come back to-
> gether, in a car together. It's not like he drove her somewhere,
> left her, and came back alone. They come back together, still
> together, in violation of both some—a different court order
> and in violation of the probation officer's instructions not to
> do that, for your own benefit, right? I mean, this just--it
> sounds like just an awful toxic, toxic thing that leads to dan-
> gerous events for both of you.
>
> And the Court and your probation officer had said, enough is
> enough; this—we're done with this. And nevertheless, you're
> driving around with her. I wish you would have had--just said,
> no, no, no, like, I'm not letting her in; I'm not talking to her; I
> don't care how she got here; she's going to have to find her way
> home. She got here somehow, all the way from Lubbock to
> Amarillo; she can find all of her way back.
>
> But bad things have happened. Bad things can happen in this.
> Enough was enough. You had had many opportunities, and
> yet, here we are. And that is—that's disappointing to me. I
> hope that, you know, this experience--I don't know that it is
> going to be the thing that makes you realize that if you con-
> tinue to make these decisions with Ms. Steptoe, you're going
> to get the same results, which are not good results. So I hope
> you use this time as productively as you can to find a different
> path.
>
> Today, I must consider the nature and circumstances of your
> offense, I must consider your history and your characteristics,
> and I must consider the need to afford adequate deterrence of
> criminal conduct. And after considering all of those, I have

determined that a sentence of 18 months is sufficient, but not greater than necessary.

ROA.191-92. It added, "There are repeat and concerning violations despite prior opportunities, and for all the reasons I have explained, I do think 5 to 11 is not sufficient and not reasonable, and 18 months is sufficient, but not greater than necessary." ROA.193.

Mr. Fleeks objected to the substantive reasonableness of the sentence. ROA.195. The court overruled his objection "for all the reasons [it] previously stated[.]" ROA.195.

## Summary of the Argument

The district court's perception that Mr. Fleeks was guilty of "repeat and concerning violations" pervaded the sentencing hearing. ROA.193. These statements reveal the court's belief that Mr. Fleeks had, on multiple occasions, made poor decisions with respect to his interactions with Steptoe. But such frustration only makes sense if the court made the factual finding that Mr. Fleeks *actually* assaulted Steptoe on September 30—a clearly erroneous finding, because Steptoe admitted that she had fabricated the allegations. ROA.130. Without this factual finding, there is no reason for the court to be "concerned" about "repeat interactions with Ms. Steptoe." ROA.187. There is the sole violation on November 10—which occurred when Steptoe drove 122 miles from Lubbock to Amarillo, and showed up on Mr. Fleeks's doorstep demanding a ride. ROA.187-88 (counsel explaining that Mr. Fleeks moved to Amarillo to get away from Steptoe); ROA.191 (court crediting counsel's explanation).

But rather than punishing Mr. Fleeks for the *one instance* of disobeying his probation officer, the district court upwardly varied based on its perception that he had *repeatedly* failed to stay away from Steptoe. *See, e.g.*, ROA.187 (expressing concern with "repeat interactions with Ms.

Steptoe"); ROA.192 (noting that "if you continue to make these decisions with Ms. Steptoe, you're going to get the same results, which are not good results.").

By upwardly varying based on its belief that Mr. Fleeks had actually assaulted Steptoe on September 30, the court relied on clearly erroneous facts and committed a procedural error of constitutional magnitude. *See United States v. Gall*, 552 U.S. 38, 51 (2007) (characterizing "selecting a sentence based on clearly erroneous facts" as a "significant procedural error"); *United States v. Tobias*, 662 F.2d 381, 388 (5th Cir. Unit B Nov. 1981) ("Sentences based on erroneous and material information or assumptions violate due process.") (citations omitted).

Put differently, the court erred by relying on facts in a withdrawn petition that lacked sufficient indicia of reliability. This is also reversible procedural error under this Court's precedent. *See United States v. Foley,* 946 F.3d 681, 686 (5th Cir. 2020).

The government cannot demonstrate that the error is harmless, because the court's own words reveal that its perception of repeated misconduct motivated the upward variance. *See, e.g.*, ROA.193 ("There are repeat and concerning violations despite prior opportunities . . . 18

15

months is sufficient, but not greater than necessary."). But Mr. Fleeks would prevail even under plain error review, because the error is clear and obvious, and the court's mistaken belief that Mr. Fleeks had assaulted Steptoe on September 30 created the perception of "repeat and concerning violations[,]" ROA.193, which drove the upward variance.

In addition, the court plainly erred by considering the need for the sentence imposed to reflect the seriousness of the violation conduct and to provide just punishment for that conduct as dominant factors driving the sentence. *See* 18 U.S.C. § 3583(e); *United States v. Rivera*, 784 F.3d 1012, 1016-17 (5th Cir. 2015) (quoting 18 U.S.C. § 3553(a)(2)(A)), *reh'g denied*, 797 F.3d 307 (5th Cir. 2015). This Court's precedent makes clear that these are improper factors for the court to consider in a revocation sentencing, and the error affected Mr. Fleeks's substantial rights because the sentence was motivated by the need for the sentence to reflect the seriousness of his conduct and to provide just punishment for it. *See id.*; *United States v. Sanchez*, 900 F.3d 678, 683-84 (5th Cir. 2018) ("[U]nder our established law, revocation sentences may *not* take account of retribution.") (emphasis in original) (cleaned up).

16

Finally, the sentence is substantively unreasonable because while imposing an above-Guideline sentence, the district court erroneously accorded weight to two improper and irrelevant factors: (1) the clearly erroneous factual finding that Mr. Fleeks had assaulted Steptoe on September 30; and (2) the seriousness of the violation conduct and the need to punish that conduct. By giving undue weight to two improper factors, the sentence is "greater than necessary" to effectuate the purposes of sentencing. 18 U.S.C. § 3553(a). This Court should vacate Mr. Fleeks's sentence and remand for resentencing.

## Argument

**I.   The court procedurally erred by relying on clearly erroneous factual findings. Those findings were based on a withdrawn petition that lacked sufficient indicia of reliability.**

### A. Mr. Fleeks preserved his objection to an upward variance based on his interactions with Steptoe.

This Court reviews a sentence imposed upon revocation of supervised release under the "plainly unreasonable" standard. *See United States v. Miller*, 634 F.3d 841, 843 (5th Cir. 2011). First, the Court determines whether the district court committed any significant procedural error. *United States v. Warren*, 720 F.3d 321, 326 (5th Cir. 2013). Next, the Court considers "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Miller*, 634 F.3d at 843 (cleaned up). "If the sentence is unreasonable, then the court considers 'whether the error was obvious under existing law.'" *United States v. Winding*, 817 F.3d 910, 913 (5th Cir. 2016) (quoting *Miller*, 634 F.3d at 843). "The district court's application of the Guidelines is reviewed *de novo*, and factual findings are reviewed for clear error." *Id.* (citation omitted).

"To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009) (citation omitted). An argument "is preserved when the basis for objection presented below gave the district court the opportunity to address the gravamen of the argument presented on appeal." *United States v. Garcia-Perez*, 779 F.3d 278, 281-82 (5th Cir. 2015) (cleaned up).

Mr. Fleeks preserved his objection to an upward variance based on his "repeat interactions" with Steptoe. ROA.187-89. In response to the court's warning that it was considering an upward variance on the basis of his "repeat interactions with Ms. Steptoe," ROA.187, he explained that he moved from Lubbock to Amarillo to get away from her, that she traveled 122 miles to show up on his doorstep asking for a ride, and appeared to have called the police herself. ROA.187-89. Based on this context, Mr. Fleeks asked the court not to vary upward, "given the nature of how law enforcement got involved in this case and actually what did happen." ROA.189. In other words, he should not have given Steptoe a ride, but there was no need to sentence him *above* the recommended range because, as he explained, she appeared to have manufactured the "hostage

19

situation" and called the police herself. *See* ROA.189. The court replied, "I understand your argument inferences." ROA.189.

But, the court upwardly varied anyway. It credited Mr. Fleeks's explanation, ROA.191, but expressed disappointment that Mr. Fleeks had repeatedly made bad decisions with respect to his interactions with Steptoe. ROA.192 ("Enough was enough. You had had many opportunities, and yet, here we are."). It upwardly varied, warning Mr. Fleeks that he needs to "realize that if you continue to make these decisions with Ms. Steptoe, you're going to get the same results, which are not good results." ROA.192. It explained further: "There are repeat and concerning violations despite prior opportunities, and for all the reasons I have explained, I do think 5 to 11 is not sufficient and not reasonable, and 18 months is sufficient, but not greater than necessary." ROA.193. In response to the court's sentence and explanations, Mr. Fleeks objected to the substantive reasonableness of the sentence. ROA.194, 195.

In sum, Mr. Fleeks objected to the upward variance based on the court's perception that he had repeatedly made bad decisions with respect to Steptoe. *See* ROA.187-89, 194-95. This gave the district court sufficient opportunity to address the gravamen of the argument and to

correct the error. *See Garcia-Perez*, 779 F.3d at 281-82; *Neal*, 578 F.3d at 272. While Mr. Fleeks's "argument has been refined on appeal, its essence was fairly presented to the district court." *Garcia-Perez*, 779 F.3d at 282.

**B. The court erred by imposing an upward variance based on factual findings that were clearly erroneous and based on a withdrawn petition with allegations that lacked sufficient indicia of reliability.**

As precedent makes clear, a district court commits a "significant procedural error," of constitutional magnitude when it bases its sentence on a clearly erroneous factual finding. *Gall*, 552 U.S. at 51 (characterizing "selecting a sentence based on clearly erroneous facts" as a "significant procedural error"); *Tobias*, 662 F.2d at 388 ("Sentences based on erroneous and material information or assumptions violate due process.") (citations omitted); *Warren*, 720 F.3d at 331 ("[I]t is procedural error at revocation sentencing to select a sentence based on clearly erroneous facts.") (cleaned up).

Here, the district court erred by relying on the withdrawn Petition filed on October 2, 2024, which summarized Steptoe's accusations that Mr. Fleeks struck her "in the head and face with his fists multiple times"

and later "st[ruck] her again with his fists all over her body and he then drug her inside the residence by her hair to continue to assault her." ROA.116-117. These facts are clearly erroneous, because as the government told the court, Steptoe later admitted that "everything [she had told the police] was false." ROA.130. Based on this confession, the government determined that it "can no longer prove Fleeks violated a condition of his supervised release" and withdrew its motion to revoke. ROA.130. Steptoe signed an affidavit of non-prosecution, ROA.135, and based on her and the government's representations regarding the unreliability of her accusations, Probation withdrew its October 2 Petition. ROA.133-35. The court agreed, granting the withdrawal of both the October 2 Petition and the government's motion to revoke. ROA.132, 134.

There is no question that the court relied on Steptoe's accusations that Mr. Fleeks assaulted her on September 30. This is evident from the court's numerous statements assuming that Mr. Fleeks had done something wrong in connection with the prior petition:

- "This is an unusual case. We've had *prior notifications*. We had a *prior petition*. It was dismissed." ROA.184 (emphasis added).

- "And even though all those *multiple prior encounters* almost led to a revocation, didn't; protective order issues; specific instructions; *does it again*." ROA.184-85 (emphasis added).

- "I'm much less concerned about him testing positive for alcohol than I am the *repeat interactions with Ms. Steptoe*." ROA.187 (emphasis added).

- "But nevertheless, *you almost get revoked once*. You don't. You get arrested once. That case goes away. Protective order issues, and the fact is, you did—*you were with her that day*." ROA.191 (emphasis added).

- "And the Court and your probation officer had said, *enough is enough*; this—we're done with this. And nevertheless, *you're driving around with her*." ROA.191 (emphasis added).

- "*Enough was enough*. You had had *many opportunities*, and yet, here we are. And that is—that's disappointing to me. I hope that, you know, this experience—I don't know that it is going to be the thing that makes you realize that if you continue to *make these decisions with Ms. Steptoe*, you're going to get the same results, which are not good results." ROA.192 (emphasis added).

These statements reveal the court's perception that Mr. Fleeks had, on multiple occasions, made poor decisions with respect to his interactions with Steptoe. But such frustration only makes sense if the court made the factual finding that Mr. Fleeks *actually* assaulted Steptoe on September 30—a clearly erroneous finding, because Steptoe admitted that she had fabricated the allegations. ROA.130. Without this factual finding, there is no reason for the court to be "concerned about repeat interactions

with Ms. Steptoe." ROA.187. There is the sole violation on November 10—which occurred when Steptoe drove 122 miles from Lubbock to Amarillo, and came into contact with Mr. Fleeks when she showed up on his doorstep and asked for a ride. ROA.187-88, 191.

But rather than punishing Mr. Fleeks for the *one instance* of disobeying his probation officer, the district court upwardly varied on the false assumption that Mr. Fleeks had assaulted Steptoe on September 30. The district court erred by relying on clearly erroneous facts, thereby rendering Mr. Fleeks's sentence procedurally unreasonable. *Gall*, 552 U.S. at 51; *Tobias*, 662 F.2d at 388; *Warren*, 720 F.3d at 331; *see also United States v. Sanchez*, 277 F. App'x 494, 496-97 (5th Cir. 2008) (unpublished) (vacating sentence as procedurally unreasonable based upon clearly erroneous factual determinations); *United States v. Jimenez-Espinoza*, 408 F. App'x 823, 824-25 (5th Cir. 2011) (unpublished) (vacating sentence based on district court's mistaken belief that defendant had profited from offense of conviction for transporting aliens).

Put differently, the court erred by relying on facts in a withdrawn petition that lacked sufficient indicia of reliability. In *United States v. Foley,* 946 F.3d 681, 686 (5th Cir. 2020), this Court held that district

courts may not rely on a bare arrest record. An arrest record is "bare" when it refers to the mere fact of an arrest—like the date or charge—without information about the underlying facts. *Id.* By contrast, an arrest record is not bare "when it is accompanied by a factual recitation of the defendant's conduct that gave rise to a prior unadjudicated arrest ***and that factual recitation has an adequate evidentiary basis with sufficient indicia of reliability***." *Id.* (cleaned up) (emphasis added). The October 2 petition fell short of the second requirement. Although it included a description of the alleged facts—satisfying *Foley's* first requirement—that factual recitation lacked sufficient indicia of reliability because as the government conceded, it was false. *See* ROA.130.

*Foley* favorably cited *Standefer* and *Perez*, two unpublished decisions holding that a district court commits procedural error by relying on unsupported allegations in a revocation petition. *Id.* at 686-87. In *Standefer,* the district court erroneously revoked the defendant's supervised release because the government failed to produce any evidence supporting the new law violations alleged in the revocation petition. *United States v. Standefer,* No. 95-50043, 1996 WL 46805, *3-4 (5th Cir. 1996) (unpublished). Likewise, in *Perez,* this Court held that a district court

erred by relying on facts alleged in the petition—in the absence of any additional evidence—because the petition's "allegations alone were not evidence." *United States v. Perez,* 460 F. App'x 294, 302 (5th Cir. 2012) (per curiam) (unpublished). In a third unpublished decision, this Court held that when the defendant pleads "not true" and no evidence is offered to support the allegations in the petition, it is error to revoke the defendant "solely on the allegations in the petition." *United States v. Cortes-Zuniga,* No. 97-40697, 1998 WL 244744, at *1 (5th Cir. 1998) (per curiam) (unpublished).

These cases make clear that it is error for the district court to rely on unsupported allegations in a petition that lack sufficient indicia of reliability. *See Perez,* 460 F. App'x at 302 (the petition's "allegations alone were not evidence."); *Foley,* 946 F.3d at 686. The district court's error here was even more egregious because it relied on a petition that was *withdrawn* based on the government's concession that it could not prove any supervised release violations based on the September 30 incident. *See* ROA.130. That concession was based on Steptoe's voicemail to the prosecutor that "'everything was false[,]'" and "her statements about Fleeks assaulting her and breaking her phone were false." ROA.130. Not only

did the court rely on unproven allegations in a withdrawn petition, but the government admitted that those allegations lacked sufficient of indicia of reliability. *See* ROA.130. "If the factual recitation lacks sufficient indicia of reliability, then it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence." *United States v. Windless,* 719 F.3d 415, 420 (5th Cir. 2013) (citing *United States v. Harris,* 702 F.3d 226, 231 (5th Cir. 2012)); *see Foley,* 946 F.3d at 686 (relying on *Windless* for a revocation proceeding). *See also Townsend v. Burke*, 334 U.S. 736, 740-41 (1948) (determining, on habeas corpus review, that a sentence was constitutionally invalid when the defendant was not represented at sentencing and the judge relied on "materially untrue" assumptions).

The government cannot meet its burden of showing these errors to be harmless, especially in light of the court's numerous statements revealing its frustration and disappointment that Mr. Fleeks had not learned his lesson based on the September 30 incident. *See supra* pages 22-23. It noted that this is an "unusual case" because of "prior notifications. We had a prior petition." ROA.184. It said "even though all those

*multiple prior encounters* almost led to a revocation, didn't; protective order issues; specific instructions; *does it again*." ROA.184-85 (emphasis added). The court emphasized its concern with "the repeat interactions with Ms. Steptoe[,]" ROA.187, and it explicitly referenced those interactions as driving the upward variance. *See* ROA.193 ("There are repeat and concerning violations despite prior opportunities, and for all the reasons I have explained, I do think 5 to 11 is not sufficient and 18 months is sufficient, but not greater than necessary.").

The district court committed procedural error by relying on clearly erroneous factual findings. Or stated differently, it erred by relying on a withdrawn petition that lacked sufficient indicia of reliability. As established by *Gall*, 552 U.S. at 51, *Tobias*, 662 F.2d at 388, *Warren*, 720 F.3d at 331, *Foley,* 946 F.3d at 686, and the other cases described above, this error is "obvious under existing law," and satisfies the plainly unreasonable standard. *See Winding*, 817 F.3d at 913 (quoting *Miller*, 634 F.3d at 843) (cleaned up). Accordingly, this Court should vacate Mr. Fleeks's sentence and remand for resentencing.

### C. Mr. Fleeks prevails even under plain error review because this Court's precedent clearly bars a district court from sentencing a defendant based on unreliable and unsupported allegations.

When a defendant fails to bring a sufficient objection to the attention of the district court, review is for plain error. *United States v. Warren*, 720 F.3d 321, 326 (5th Cir. 2013); *see* Fed. R. Crim. P. 52(b). Even if Mr. Fleeks failed to adequately preserve the issue he now raises on appeal, he is entitled to relief because he meets all four prongs of plain error review.

To prevail, Mr. Fleeks must show that 1) there was an error, 2) the error is clear or obvious, and 3) the error affected his substantial rights. *Rosales-Mireles v. United States*, 585 U.S. 129, 134-35 (2018); *see* Fed. R. Crim. P. 52(b). "Once those three conditions have been met, the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 1905 (cleaned up).

As noted above, the error is clear and obvious, given Supreme Court and Fifth Circuit precedent holding that "selecting a sentence based on clearly erroneous facts" constitutes a "significant procedural error." *Gall*, 552 U.S. at 51; *Tobias*, 662 F.2d at 388 ("Sentences based on erroneous

and material information or assumptions violate due process.") (citations omitted); *Warren*, 720 F.3d at 331 ("[I]t is procedural error at revocation sentencing to select a sentence based on clearly erroneous facts.") (cleaned up).

In addition, this Court's precedent bars reliance on facts contained in a petition that lack an adequate evidentiary basis with sufficient indicia of reliability. *Foley*, 946 F.3d at 686; *Perez*, 460 F. App'x at 302; *Standefer*, 1996 WL 46805, *3-4; *Cortes-Zuniga*, 1998 WL 244744, *1.

The plain error affected Mr. Fleeks's substantial rights. To meet this prong, he must "show a reasonable probability, that but for the error, the outcome of the proceeding would have been different." *United States v. Blanco*, 27 F.4th 375, 380–81 (5th Cir. 2022) (cleaned up). "The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004) (citation omitted). Rather, Mr. Fleeks need only "undermine confidence in the outcome of the proceeding." *Id.* at 83 (cleaned up). As already explained, the court's mistaken belief that Mr. Fleeks had assaulted Steptoe on September 30

created the perception of "repeat and concerning violations[,]" ROA.193, which drove the upward variance. *Cf. United States v. Wooley*, 740 F.3d 359, 369 (5th Cir. 2014) (finding an effect on the defendant's substantial rights and vacating the sentence as substantively unreasonable given the district court's consideration of an improper factor and a significant increase in the sentence from the Guideline range).

Finally, the error amounts to a plain sentencing error, which seriously affects the fairness, integrity, or public reputation of the proceedings. As this Court observed, "*Rosales-Mireles v. United States* noted that a plain sentencing error is 'precisely the type of error that ordinarily warrants relief.'" *United States v. Herndon*, 807 F. App'x 286, 291 (5th Cir. 2020) (unpublished) (cleaned up). In making the determination, the Court "also consider[s] the particular facts of the case . . . and the degree of the error in determining whether to exercise our discretion." *United States v. Sanchez-Arvizu*, 893 F.3d 312, 317 (5th Cir. 2018) (citing *United States v. Martinez–Rodriguez*, 821 F.3d 659, 666 (5th Cir. 2016);*United States v. Guillen–Cruz*, 853 F.3d 768, 775–76 (5th Cir. 2017) (collecting cases and holding a sentence disparity of 8 months was reversible plain error); *United States v. Santacruz–Hernandez*, 648 F. App'x 456, 458 (5th

Cir. 2016) (holding a sentence disparity of 2 months was reversible plain error); *United States v. Price*, 516 F.3d 285, 289–90 (5th Cir. 2008) (holding a sentence disparity of 18 months was reversible plain error)).

In *Rosales-Mireles*, the Supreme Court also "explained that in the ordinary case,'" another factor "favoring error correction" is that "re-sentencing is relatively easy." *Herndon*, 807 F. App'x at 291 (citing *United States v. Perez-Mateo*, 926 F.3d 216, 218 (5th Cir. 2019)). And when the error complained of "ultimately result[s] from judicial error rather than a defendant's strategy," that factor "also favor[s] error correction." *Id.* (citing *Perez-Mateo*, 926 F.3d at 218) (cleaned up). *Id.*

These factors weigh in favor of remand. Mr. Fleeks's sentence resulted from judicial error, and would be "relatively easy" to correct via a resentencing. *Id.* It resulted in a sentence 7 months above the applicable Guidelines range of 5 to 11 months, and warrants the Court's exercise of discretion. *See Sanchez-Arvizu*, 893 F.3d at 317.

II. **The court procedurally erred by considering impermissible factors—including the seriousness of the conduct involved in the supervised release violation and the need to punish Mr. Fleeks for that conduct—as dominant factors in the revocation sentencing.**

**A. Plain error review applies.**

This Court ordinarily reviews a sentence imposed upon revocation of supervised release under the "plainly unreasonable" standard. *Miller*, 634 F.3d at 843. But Mr. Fleeks did not preserve this issue, so review is for plain error. *Warren*, 720 F.3d at 326; Fed. R. Crim. P. 52(b).

To prevail, Mr. Fleeks must show that 1) there was an error, 2) the error is clear or obvious, and 3) the error affected his substantial rights. *Rosales-Mireles*, 585 U.S. at 134-35; Fed. R. Crim. P. 52(b). "Once those three conditions have been met, the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 1905 (cleaned up).

**B. The court plainly erred by considering as dominant factors the seriousness of the conduct and the need to provide punishment for that conduct.**

This Court has made clear that "[i]n light of *Miller*, there is no reasonable dispute as to whether a district court may rely upon the seriousness of the offense and the need for just punishment when sentencing a defendant for violation of the conditions of his supervised release." *Rivera*, 784 F.3d at 1017. "In other words, under our established law, revocation sentences may *not* take account of retribution." *Sanchez*, 900 F.3d at 684 (emphasis in original) (cleaned up).

18 U.S.C. § 3583(e) lists the permissible factors for the district court to consider in determining a revocation sentence. This Court recognized that the provision "requires district courts to consider certain § 3553 factors but omits from this list § 3553(a)(2)(A), which concerns 'the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" *Rivera*, 784 F.3d at 1016 (quoting 18 U.S.C. § 3553(a)(2)(A)), *reh'g denied*, 797 F.3d 307 (5th Cir. 2015). "Section 3553(a)(2)(A) as written refers to the seriousness of and just punishment for 'the offense,' which our court

implicitly has understood to mean the conduct that constituted the violation of the conditions of supervised release." *Sanchez*, 900 F.3d at 683 n. 3 (citing *Rivera*, 784 F.3d at 1017).

So, when sentencing a defendant for violating his supervised release, the district court may not consider the seriousness of the conduct involved in the violation or the need to provide just punishment for that conduct. *See id.*; *Rivera*, 784 F.3d at 1016-17. This makes sense, because a revocation sentence is "part of the penalty for the initial offense[,]" rather than punishment for the conduct underlying the violation of supervised release. *Johnson v. United States*, 529 U.S. 694, 700 (2000).

This Court explained that "a sentencing error occurs when an impermissible consideration is a dominant factor in the court's revocation sentence, but not when it is merely a secondary concern or an additional justification for the sentence." *Rivera*, 784 F.3d at 1017 (citing *United States v. Walker*, 742 F.3d 614, 616 (5th Cir. 2014)). There may be more than one "dominant factor[]" in a sentencing decision, so the question is not whether the seriousness of the violation conduct or the need to provide just punishment for that conduct was the *primary* or the *only* concern motivating the district court. *Rivera*, 784 F.3d at 1017. The court

errs when it selects either of those impermissible considerations as one of the "dominant factors," that is, more than "secondary concern[s]" or "additional justification[s]." *Id.*

The court's preoccupation with Mr. Fleeks's violation conduct make clear that the need to punish this conduct was a dominant factor—if not *the* dominant factor—driving the upward variance. The court's statements reveal its perception that Mr. Fleeks had engaged in prior misconduct involving Steptoe, and that it needed to punish him for it. *See* ROA.184 ("And even though all of those multiple prior encounters almost led to a revocation, didn't; protective order issues; specific instructions; *does it again*) (emphasis added); ROA.187 (expressing concerns about "repeat interactions with Ms. Steptoe"); ROA.191 ("Protective order issues, and the fact is, you did--*you were with her that day*.") (emphasis added); ROA.191 ("And the Court and your probation officer had said, enough is enough; this—we're done with this. And nevertheless, *you're driving around with her*.") (emphasis added); ROA.192 ("I don't know that it is going to be the thing that makes you realize that if you continue to *make these decisions with Ms. Steptoe*, you're going to get the same results, which are not good results.") (emphasis added).

Significantly, the court justified the upward variance based on its concern about repeated interactions with Steptoe. "There are repeat and concerning violations despite prior opportunities, and for all the reasons I have explained, I do think 5 to 11 is not sufficient and not reasonable, and 18 months is sufficient, but not greater than necessary." ROA.193.

And, it pointed out that Mr. Fleeks's behavior is "an indicator that there's just no regard for the rules placed on him, either by this Court or any other," ROA.185, further revealing its desire to promote respect for the law. *See Miller*, 634 F.3d at 844 (noting that district court's repeated references to Miller's "lack of respect for the law" shows that it "clearly considered § 3553(a)(2)(A)" and in doing so, "erred.") (cleaned up).

The government will likely point to the court's boilerplate statement that it considered the permissible factors. ROA.192 (noting that it must consider "the nature and circumstances of your offense . . . your history and your characteristics, and . . . the need to afford adequate deterrence of criminal conduct."). But this Court has repeatedly rejected the argument that the district court did not significantly rely on improper factors simply because the court also discussed permissible sentencing factors. *See Rivera*, 784 F.3d at 1017; *Miller*, 634 F.3d at 844 (district

court erred where it listed permissible factors but made repeated references to impermissible factors); *see also United States v. Culbertson*, 712 F.3d 235, 242-43 (5th Cir. 2013) (rejecting the government's argument that district court did not primarily rely on an improper factor because the court also referenced permissible sentencing factors).

Similarly here, the district court's repeated references to the seriousness of the violation conduct and the need to punish it occupied most of the court's attention and dominated the revocation hearing. *See supra* pages 22-23. Although the district court made some boiler-plate references to permissible sentencing factors—including the nature and circumstances of the offense, Mr. Fleeks's history and characteristics, and deterrence, ROA.192—it never discussed how those permissible factors affected its decision-making. And, mere mention of these factors does not alter the reality that the court's focus throughout the hearing was on Mr. Fleeks's "repeated" failure to stay away from Steptoe, and the associated need to provide punishment for it.[2] *See Rivera*, 784 F.3d at 1017; *Sanchez*,

---

[2]     *See, e.g.*, ROA.192 ("Enough was enough. You had had many opportunities, and yet, here we are. And that is—that's disappointing to me. I hope that, you know, this experience--I don't know that it is going to be the thing that makes you realize that if you continue to make these decisions with Ms. Steptoe, you're going to get the same results, which are not good results.").

900 F.3d at 683, n. 3 (citing *Rivera*, 784 F.3d at 1017). Because they dominated the court's attention for most of the hearing, these factors cannot be dismissed merely as "secondary concern[s] or additional justification[s]." *Rivera*, 784 F.3d at 1017; *Culbertson*, 712 F.3d at 243 ("[T]he district court's words are the best evidence of why it did what it did, and they overshadow its passing reference to" permissible sentencing factors such as "deterrence, punishment, and the threat Culbertson posed to society.")

### C. The error affected substantial rights and warrants this Court's correction.

For the reasons already explained, the plain error affected Mr. Fleeks's substantial rights. The court's pervasive references to Mr. Fleeks's "repeated" failure to stay away from Steptoe demonstrate that it was one of—if not *the* dominant factor—driving the upward variance. *See supra* pages 22-23. He has shown "a reasonable probability, that but for the error, the outcome of the proceeding would have been different." *Blanco*, 27 F.4th at 380–81; *see also United States v. Chandler*, 732 F.3d 434, 440 (5th Cir. 2013) (vacating and remanding 127-month departure on plain-error review because the Court could not say that the district

court would have imposed the same sentence without reliance on an improper factor).

And, the error amounts to a plain sentencing error, which is "'precisely the type of error that ordinarily warrants relief.'" *Herndon*, 807 F. App'x at 291 (cleaned up). In making the determination, the Court "also consider[s] the particular facts of the case . . . and the degree of the error in determining whether to exercise our discretion." *Sanchez-Arvizu*, 893 F.3d at 317 (citing cases). And when the error complained of "ultimately result[s] from judicial error rather than a defendant's strategy," that factor "also favor[s] error correction." *Herndon*, 807 F. App'x at 291 (citing *Perez-Mateo*, 926 F.3d at 218) (cleaned up). *Id.* These factors weigh in favor of remand.

## III. The sentence is substantively unreasonable because the upward variance cannot be justified without significant reliance on the clearly erroneous factual findings, the seriousness of the violation conduct, and the need to punish that conduct.

### A. This Court reviews this claim under an abuse of discretion standard.

Mr. Fleeks preserved the error by asking for a sentence within the policy statement range of 5 to 11 months and objecting to the substantive reasonableness of the sentence after it was pronounced. ROA.189, 195.

Thus, he preserved a substantive reasonableness challenge to his 18-month sentence. *United States v. Redmond*, 965 F.3d 416, 422 (5th Cir. 2020) (quoting *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766-67 (2020)). This court reviews the substantive reasonableness of the sentence "under an abuse-of-discretion standard." *Foley*, 946 F.3d at 685 (cleaned up). Even if it determines that the sentence is substantively unreasonable, the Court will only "vacate it if the error is 'obvious under existing law,' so that the sentence is not just unreasonable but is *plainly* unreasonable." *Id.* (citations omitted) (emphasis in original).

## B. The court gave significant weight to improper and irrelevant factors.

In determining the sentence, a district court must consider the statutory factors set forth in 18 U.S.C. § 3553(a) and impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of th[at] subsection." 18 U.S.C. § 3553(a). "A non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Smith*, 440 F.3d 704, 708

41

(5th Cir. 2006). Here, the non-Guideline sentence imposed by the district court was plainly unreasonable because the court gave significant weight to two factors that should not have been considered.

As explained, the district court relied heavily on unsubstantiated and unreliable allegations by Steptoe that Mr. Fleeks had assaulted her on September 30—which she later told the prosecutor were "false." ROA.130. Believing that she had fabricated the accusations, the government withdrew its motion to revoke supervised release. ROA.130-31. And yet, as evidenced by the court's repeated references to the prior petition, ROA.184, the protective order, ROA.184, 191, and the need to stay away from Steptoe—the court imposed an upward variance assuming that Mr. Fleeks had engaged in prior misconduct involving Steptoe. *See* ROA.187 (expressing concerns about "repeat interactions with Ms. Steptoe"); ROA.191 ("Protective order issues, and the fact is, you did--*you were with her that day*.") (emphasis added); ROA.191 ("And the Court and your probation officer had said, enough is enough; this—we're done with this. And nevertheless, *you're driving around with her*.") (emphasis added); ROA.192 ("I don't know that it is going to be the thing that makes you realize that if you continue to *make these decisions with Ms. Steptoe*,

you're going to get the same results, which are not good results.") (emphasis added).

Such reliance was improper, because: (1) it was based on the clearly erroneous factual finding that Mr. Fleeks had assaulted Steptoe on September 30; and (2) the district court may not consider the seriousness of the conduct involved in the violation or the need to provide just punishment for that conduct. *See Rivera*, 784 F.3d at 1016-17; *Sanchez*, 900 F.3d at 683 n. 3 (citing *Rivera*, 784 F.3d at 1017).

Thus, the district court clearly erred by giving "significant weight" to two "irrelevant or improper factor[s.]" *Smith*, 440 F.3d at 708. Put another way, because it accorded significant weight to two improper factors, the upward variant sentence of 18 months is "greater than necessary" to achieve the purposes of sentencing, and is substantively unreasonable. *See* 18 U.S.C. § 3553(a).

In light of these considerations, this Court should vacate Mr. Fleeks's sentence and remand the case for resentencing.

## Conclusion

For the reasons stated above, Mr. Fleeks respectfully requests that

this Court vacate his sentence and remand for sentencing.

Respectfully submitted,

Jason D. Hawkins
Federal Public Defender for the
Northern District of Texas

*/s/ Loui Itoh*
LOUI ITOH
Assistant Federal Public Defender
PO Box 17743
D.C. Bar No. 1018988
819 Taylor Street, Room 9A10
Fort Worth, Texas 76102
(817) 978-2753
Loui_Itoh@fd.org
*Counsel for Mr. Fleeks*

## Certificate of Service

I certify that on May 27, 2025, I filed this brief electronically in the Court's ECF system. Opposing counsel has therefore been served pursuant to Fifth Circuit Rule 25.2.5.  I further certify that: 1) any required privacy redactions have been made; 2) the electronic submission is an exact copy of the paper document; and 3) this document has been scanned for viruses and it is free of viruses.

*/s/* Loui Itoh

## Certificate of Compliance

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because the document contains 8,493 words, not including the portions exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font and 12-point Century Schoolbook font in the footnotes.

I understand that a material misrepresentation in completing this certificate, or circumvention of the length limitations in Federal Rule of Appellate Procedure 32(a)(7), may result in the Court striking the brief and imposing sanctions.

*/s/* Loui Itoh